IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUSANO CARDENAS, JR.

        Petitioner,

vs.                                                         Civil No. 97-1011 BB/WWD

RONALD LYTLE, Warden,

        Respondent.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

    1. THIS MATTER comes before the Court on Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner ("Cardenas") is currently incarcerated pursuant to the judgment, sentence and commitment of the District Court of Lea County on convictions of Aggravated Battery with a firearm enhancement and 3rd degree Criminal Sexual Contact and is represented by the Federal Public Defender.

    2. Respondent filed a motion to dismiss based on Rule 9, 28 U.S.C. § 2254 Cases, contending that because the state record has been destroyed, the State was prejudiced in its ability to respond to the claims raised in the petition.[1] This Court denied the motion on December 20, 1999 [see docket ## 73, 75] and entered a briefing schedule. [docket # 74].

    3. The state court tapes and transcripts have been destroyed pursuant to a written retention policy. However, the parties have submitted documents which the Court found sufficient to allow the State to respond adequately to the allegations in the petition: the Record

---

[1] Petitioner's convictions occurred in 1985 and 1986. Ans., Ex. A, E.

Proper for state cases CR 82-284, CR 85-252, and 85-302; the deposition of David L. Hoglund, who represented Petitioner in the criminal proceedings;[2] and copies documents containing findings from certain state court proceedings.

    4.  In CR 85-252, Petitioner was convicted following a jury trial of aggravated battery with a firearm enhancement, and sentenced to four years.  In CR 85-302, he was convicted of three counts of criminal sexual contact of a minor and sentenced to three years on each count.  For both CR 85-252 and CR 85-302, Cardenas' sentence was enhanced by eight years for each count for being a habitual offender, based on the third state case, CR 82-284, a burglary conviction.  Mem. Brf., Att. A; Ans., Exs. B & C.

    5.  The grounds alleged in the petition are as follows:[3]

(1)  Whether Petitioner's conviction in New Mexico case CR 85-252 was secured in violation of Petitioner's Sixth and Fourteenth Amendment right to confrontation of witnesses; and

(2)  Whether Petitioner's conviction in New Mexico case CR 85-302 was secured in violation of Petitioner's Sixth and Fourteenth Amendment right to the effective assistance of counsel.

**Ground One - CR 85-252**

*Factual Background - Shooting Incident*

    6.  Parties agree that the facts as set out in Petitioner's brief on pages three through five,

---

[2] The deposition was conducted by phone because Mr. Hoglund was incarcerated on bank fraud charges in a federal prison camp in Tennessee.  His anticipated date of release was March 10, 2000.  Hoglund Dep. at 24. The transcript indicated that defense counsel's memory of the underlying criminal cases was sufficient to allow the State to respond to allegations of ineffective assistance of counsel.  See docket # 73 at 2.

[3] Petitioner was allowed to amend or clarify the grounds in his petition twice.  See docket ## 77, 58.

which are based on the docketing statement filed on direct appeal in state court (Ans., Ex. E), are accurate. They are set out here as follows.

7. On August 16, 1985, Petitioner traveled to a farm near Lovington, New Mexico, accompanied by his niece, Maria Falcon Hernandez and his son-in-law, Jesus Morales. The purpose of Cardenas' trip apparently was to help his niece retrieve the title to a car from her husband, Hipolito Pena. Pena's brother-in-law, Ramon Orosco, was with Mr. Pena when Petitioner arrived at the farm. An encounter ensued and Hipolito Pena was shot in the left buttock by Petitioner. At trial, Cardenas claimed he believed that Pena had a gun and that he shot Pena in self-defense. Cardenas testified that Pena had grabbed Jesus Morales to use him as a shield while making movements Pena interpreted as an attempt to draw a gun. Cardenas stated that he shot at Pena's hand, then fired again when Pena ran off.

8. Other witnesses testified at trial, offering little variation of the basic facts.[4]

9. Ramon Orosco testified that said that both Manda and his niece threatened to kill both himself and Pena. Ans., Ex. E at 5. He stated that there was arguing about the money "for some time." According to Orosco, after Pena came back out of the farmhouse with the ten dollars for Cardenas, Cardenas told Orosco he would have to fight him and approached him in a fighting stance, whereupon Orosco fled into the dark. Orosco did not see the shot fired, but heard the shot when he was about fifty meters away.

10. Jesus Morales' testimony about the incidents leading up to the shooting was consistent with that of Orosco. He testified that Pena, Petitioner and Maria Hernandez argues;

---

[4] The details of different witnesses' testimony which follow are presented in the docketing statement filed by Petitioner, although they are not set out in the briefs for the present petition. I include them here as a backdrop to Petitioner's due process claim.

that Cardenas asked Pena for ten dollars for gas money for the drive out to the farm; that Pena reached into his back pocket, then went into the farmhouse and come out and gave the Petitioner ten dollars; that Orosco interjected himself into the argument and Cardenas told Orosco that he was going to beat him up; that when Orosco walked to a clearing and faced Petitioner in a fighting stance, Petitioner went to Jesus Morales to get his gun and put it in his own pocket; Petitioner advanced toward Orosco and Orosco ran off into the dark. Ex. E at 6. Morales also testified that Cardenas then started toward himself and Pena, at which point Pena grabbed Morales from behind while Morales struggled to free himself. Morales saw Petitioner with a gun, heard a shot, and ran away.

11. In the tape recorded testimony of Hipolito Pena from the preliminary hearing,[5] Pena testified to the same facts as did Ramon Orosco to the point Orosco had fled. He continued that Petitioner turned toward him and pointed a hand gun at him and that Pena then grabbed Morales to use as a shield. Pena stated that Morales held onto him and that he, Pena, tried to break free. Pena testified that Petitioner shot him, the bullet hitting him in the left buttock. He broke free and ran to a nearby farmhouse.

12. At trial, Cardenas testified that he went to the farm with his niece and son-in-law to help her get papers for her car which had been repossessed by Ramon Orosco's brother. Ex. E at 7-8. He took a pistol, but gave it to Jesus Morales when he got to the farm. He stated that he asked Pena for the car papers, which Pena agreed to produce the following day, but that he did not ask for money other than $10.00 for the gas money for the trip to the farm which his niece had promised him Pena would pay him. Cardenas continued that Pena had reached into his

---

[5] Pena was cross-examined at the preliminary hearing. Hoglund Dep. at 28.

pocket, went into the farm house and returned outside and attempted to hand some money to Cardenas. Because Cardenas thought Pena had armed himself inside the house, Cardenas backed away from Pena and asked Pena to lay the money on the truck fender, which Pena did. Id.

13. Cardenas further testified that Orosco kept interjecting himself into the argument, and that Orosco invited Cardenas to fight. Cardenas claimed that his back was to Pena when he walked over to Morales to get his gun and Orosco ran away when Cardenas put his gun in his back waist band. Cardenas stated that when he turned around, he saw Pena grab Morales from behind and reach toward his front pocket as if to retrieve a weapon. Morales spun to Pena's side and Cardenas drew and fired his pistol and shot at Pena's hand. Pena ran off and Cardenas and his niece left the area.

*Factual Background - Attempts to Find Pena*

14. The facts concerning the prosecution's attempts to procure Pena as a witness for the trial are undisputed. Rather, Petitioner contends that these attempts were not sufficient to render Pena "unavailable" for purposes of the Confrontation Clause.

15. In September or October of 1985, Pena informed a Lea County Deputy Sheriff that he was returning to Mexico for medical treatment. In November of 1985, a subpoena was issued at the house of Delores Orosco, Ramon Orosco's sister-in-law, requiring Pena's presence at Petitioner's trial. Ms. Orosco told the deputy that Pena was still in Mexico but that she was willing to try to contact him at Ramon Orosco's house in Mexico.

16. Ms. Orosco went to the District Attorney's office on three occasions to call her brother-in-law's house in Mexico. She spoke once with her brother-in-law, but never made contact with Hipolito Pena. Ms. Orosco also traveled to El Paso to deliver subpoenas for both

5

Ramon Orosco and Pena.  She met with Orosco but not with Pena.

17.  On January 16, 1986, another subpoena was issued for Pena's presence at the trial which was scheduled for February 3, 1986.  RP, "Witness Subpoena," Jan. 16, 1986.[6] Petitioner's brief does not mention the issuance of the January 1986 subpoena, but in his reply does not dispute or challenge Respondent's statement that a subpoena was issued at that time. See Mem.Brf. at 4-5; Resp. at 4-5.

*Discussion*

18.  The Sixth Amendment's Confrontation Clause, made applicable to the States through the Fourteenth Amendment, provides:  "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  Pointer v. Texas, 380 U.S. 400, 403-405, (1965), cited in Ohio v. Roberts, 448 U.S. 56, 65 (1980).  Notwithstanding this right of confrontation, use of certain out-of-court statements is allowed within certain safeguards that protect one's right of due process, viz., the requirements that the out-of-court declarant is unavailable as a witness and that the statements bear sufficient indicia of reliability.  See Roberts, 448 U.S. at 65.

19.  A witness is not "unavailable" in the context of Confrontation Clause analysis unless "the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. Roberts, 448 U.S. at 74; see Fed.R.Evid. 804(a)(5) ("the proponent of the declarant's statement has been unable to procure the declarant's attendance . . . by process or other reasonable means"). Reliability can be inferred in a case where the evidence falls within a firmly rooted hearsay

---

[6] "RP" refers to the Record Proper for the underlying state case.

exception, as in this case with the former testimony exception of Fed.R.Evid. R. 804(b)(1).[7]  Id. at 66; see Mattox v. United States, 156 U.S. 237 (1895) (prior trial testimony is admissible upon retrial if the declarant becomes unavailable); Mancusi v. Stubbs, 408 U.S. 204 (1972), cited in Roberts, 448 U.S. 56, 65-66.

20. While Petitioner concedes that Pena's statements fall within this hearsay exception, he contends that the prosecution failed to satisfy the threshold requirement -- to sufficiently demonstrate that Pena was "unavailable," in the constitutional sense, to appear at trial.  Thus, as posited under United States Supreme Court law, the question here is whether Pena was "unavailable" despite good-faith efforts undertaken prior to trial to locate and present him as a witness.  Roberts, 448 U.S. at 74.

21. Under AEDPA,[8] federal courts are forbidden from granting habeas relief with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d)(1) & (2).

---

[7] The rule excludes such statements made in former testimony from the hearsay rule when the declarant "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means"; see Angelo v Armstrong World Industries, 11 F.3d 957, 962 (10th Cir. 1993).

[8] Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, tit.I, sec. 104 (to be codified at 28 U.S.C. §§ 2254(d),(e) (April 24, 1996)).  AEDPA applies to cases filed after its effective date, regardless of when state court proceedings occurred.  Wallace v. Ward, 191 F.3d 1235 (10th Cir. 1999) (citations omitted).

22. As a legal determination, the question is whether under 28 U.S.C. § 2254(d)(1), would be whether the state court's rejection of Petitioner's confrontation issue was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  On the other hand, treating the issue as one of fact, the applicable inquiry under § 2254(d)(2) would be whether the state court's rejection of the claim represented an unreasonable determination of the facts in light of the evidence.  Further, § 2254(e)(1) requires this court to afford a presumption of correctness to a state court's factual findings, unless petitioner can rebut that presumption with clear and convincing evidence.  See Moore v. Gibson, 195 F.3d 1152 (10th Cir. 1999)

23. Petitioner's first ground was presented on direct appeal, Ex. E and was addressed by the state court.[9] The state court relied on state case law, State v. Martinez, 102 N.M. 94 (Ct.App. 1984), and state evidentiary rules which track the federal standard under Ohio v. Roberts in that a defendant's confrontation rights are not violated where evidence admitted at trial comes within a firmly rooted hearsay exception and where the declarant is unavailable.[10]  Thus, I find that the state court's decision on the merits of this issue was not contrary to clearly established federal law.

24. Nor do I find that the decision involved "an unreasonable determination of the facts in

---

[9] In referring to state court findings disposing of this issue, Respondent cites to a calendar notice at Ex. G in the Answer.  However, the relevant findings are not to be found in that notice.  However, I located the correct "Calendaring Notice" in the Record Proper, which is unnumbered and file-stamped April 25, 1986, and which does address this first ground, as described by Respondent.

[10] Law which is relevant to a determination under § 2254(d) is that which is determined by the Supreme Court of the United States.  The lower federal cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar. See Williams v. Taylor, 120 S.Ct. 1495, 1507 (2000).

light of the evidence presented in the State Court proceeding."  The court of appeals noted that at the time the subpoenas were prepared, Pena was already in Mexico and that no authority existed by which process would be valid there.  RP, Calendaring Notice, April 25, 1986 at 1.

25.  Based on the facts surrounding the prosecution's attempts to procure Pena as a witness, the court also found that the state exercised "diligence in attempting to get Pena to voluntarily appear, noting that the state "made its telephone available to Ms. Orosco and she attempted to contact the witness in old Mexico on three occasions."

26.  In response to Cardenas's position that the government should have acted once it learned that Pena was leaving for Mexico, the court noted that Pena's intention to return to Mexico for medical treatment for his injuries "should not have put the state on notice that Pena did not plan to return."  RP, Calendaring Notice, April 25, 1986 at 2.  It was thus reasonable for the state not to have taken further action.

27.  In response to Cardenas's contention that the state should have written directly to Pena, the court noted that "[i]f Ms. Orosco could not get Pena to appear, it is unlikely that the state could have done any better in seeking Pena's voluntary appearance."  The court added that any argument by Cardenas that the state would have been able to coerce Pena into returning was "without merit" and concluded, "[w]e cannot say that the state did not exercise good faith and due diligence in securing Pena's attendance."  Id.

28.  I find that the state court rejection of Petitioner's confrontation claim was not "an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."

29.  Petitioner urges the Court to conduct a *de novo* review of the issue.

Notwithstanding the fact that this standard of review is not required under AEDPA, even for mixed questions of law and fact, based on the facts in the record, this Court would also come to the conclusion that Petitioner's rights under the Sixth Amendment's Confrontation Clause were not violated.

30. The Supreme Court's interpretation of the Confrontation Clause law requires the government to employ measures that are reasonable or in good faith in securing a witness' presence at trial. See Roberts, 448 U.S. at 74. The Constitution does not guarantee a witness' presence. See U.S. v. Eufracio-Torres, 890 F.2d 266, 270 (10th Cir.1989), cert. denied, 494 U.S. 1008 (1990) ("The fact that the means utilized were unsuccessful does not mean that the government's efforts were not made in good faith"); Aguilar-Ayala v. Ruiz, 973 F.2d 411, 418 (5th Cir. 1992) (fact that the witness has nevertheless failed to appear will not preclude the admission of deposition testimony).

31. As Respondent notes, the cases on which Petitioner relies for his argument that the prosecution failed to use due diligence in locating Pena, are sufficiently different so that these cases have no persuasive value.[11] The immigration status of the defendants in those cases implicated certain questions as to legal control and executive powers related to the defendants' leaving the country that are not at issue here. U.S. v. Eufracio-Torres, 890 F.2d 266, 271 (10th Cir. 1989), cert. denied, 494 U.S. 1008 (1990). Also, in the present case, no trial date was set and no subpoena was issued when Pena decided to return to Mexico.

32. Accordingly, based on the above discussion, I find that relief should be denied on this

---

[11] U.S. v. Guadian-Salazar, 824 F.2d 344 (5th Cir. 1987) and U.S. v. Eufracio-Torres, 890 F.2d 266 (10th Cir. 1989), cert. denied, 494 U.S. 1008 (1990).

ground.

**Ground Two - CR 85-302**

33. In CR 85-302, Petitioner was accused and found guilty of three counts of three criminal sexual contact of two minor females, Frieda R. and Diana R. which occurred while at a wedding party in Lovington. He was sentenced to a total sentence of 33 years for the three counts of criminal sexual contact of a minor and the habitual offender enhancement.

34. Petitioner argues that his attorney, David Hoglund, was ineffective because of a failure to present exculpatory evidence. Specifically, he alleges that counsel should have called as witnesses people who were present at the party and who could have offered testimony to account for his whereabouts the entire time he was at the party. However, he names no witnesses or description of such witnesses, stating that he no longer can remember who they are.

35. To prove his counsel was constitutionally ineffective, Cardenas must show that his counsel's performance was deficient and he was prejudiced by the deficiency. See Strickland v. Washington, 466 U.S. 668, 687 (1984); United States v. Gray,182 F.3d 762, 767 (10th Cir.1999). The decision whether to call a witness rests within the sound discretion of trial counsel. See Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997) (decision of what witnesses to call is a tactical one within the trial counsel's discretion); see also Jackson v. Shanks, 143 F.3d 1313, 1320 (10th Cir. 1998).

36. Like Petitioner's first ground, the state court made findings on this issue which should be accorded deference. The court of appeals addressed this issue and found it to be one that involved "trial tactics" by counsel. Amended Ans., Ex. V at 2 (see docket # 27). The court declined to "substitute its judgment of appropriate tactics for that of trial counsel and noted that

"other witnesses called by defense counsel, including defendant, provided testimony on the matters that defendant claims the uncalled witnesses would have testified about. . . ." Id. Cardenas offers no "clear and convincing" evidence to rebut the factual findings of the state court, nor does he challenge the legal standard on which the court relied.

37. Even without deference given to state court findings, a *de novo* review of the allegation warrants the same conclusion, based on available evidence from the Record Proper, David Hoglund's deposition, and copies of state court documents from the underlying proceedings.

38. Hoglund stated that an investigation into procuring possible witnesses was conducted on behalf of the Petitioner's case by an investigator for the state public defender's office, but that the investigation uncovered no one who spent the entire time with Petitioner at the party and witnesses were "generally unsure" as to Petitioner's whereabouts at the party. Dep. at 15-16.[12] Cardenas' wife spent the most time with him, although at times they were separated. Dep. at 31. She testified that she never saw her husband alone with either of the two children or observe him touch either child. RP, CR 83-302, at 78.

39. Petitioner's position is that he "believes that there were people present at the party who could have offered testimony regarding his whereabouts at all times. . . ." Mem.Brf. at 13. I not that he does not dispute or challenge Hoglund's statements to the effect that an investigation was conducted.

40. According to the docketing statement, Frieda R., one of the victims, testified that

---

[12] Petitioner remembers there being "approximately forty people at the party." RP, CR 85-302, at 77.

12

Petitioner "placed his arm around and over her shoulder and his hand inside her shirt and squeezed her breast area. . . ." RP,CR-85-302, at 76 (Docketing Statement, July 30, 1986; Mem.Brf, Ex.Att.A at 2.[13] The other minor, Diana R., testified that Petitioner "touched her in the vaginal area while in the kitchen of a resident [in Lovington, and that Petitioner] also made her squeeze his penis with her hand, through this clothing at the same time. . . ." Id.

41. In his deposition, David Hoglund remembered a general discussion during trial preparation concerning witnesses, but no specific recollections. Hoglund Dep. at 30. He stated that the critical testimony came down to Mrs. Cardenas' word against the minor victims. Dep. at 14. As Respondent notes, a list of trial witnesses was disclosed prior to trial, which including eight individuals, in addition to Petitioner himself and the two victims. RP at 24.

42. Hoglund explained that the decision to call witnesses would have been his call, as Petitioner's attorney. However, he would have subpoenaed them if his client had insisted, unless calling that witness would have been damaging to client's case, Dep. at 32, 34, and that he would have assigned an investigator if Petitioner had told him of individual witnesses who had specific recollections. At 30 -32. In this case, though, he recalled that he was unable to find any witnesses who could offer other than cumulative testimony. Dep. at 31.

43. The evidence leaves Petitioner's allegations as nothing more than speculation concerning the existence of other witnesses who may have something more to offer than cumulative testimony. I find no deficiency in counsel's representation. An investigation was conducted, witnesses were lined up and testified, and witnesses were excluded if their testimony

---

[13] Respondent incorrectly refers to the Docketing Statement included as Exhibit F as the source for these facts. The correct source is another Docketing Statement file-stamped July 30, 1986 found in the Record Proper and also submitted as Attachment B to the Memorandum Brief.

was cumulative.

44.  Further, even if one assume counsel's conduct to be constitutionally deficient, Petitioner cannot show prejudice, since he has no memory of, and presents no evidence of, any other witnesses that may have surfaced at the time with any kind of exculpatory evidence, notwithstanding the investigation that counsel did conduct.  Petitioner's claim fails on either basis.  See Foster v. Ward et al.,182 F.3d 1177 (10th Cir. 1999) (court may address the performance and prejudice components in any order, but need not address both if petitioner fails to make a sufficient showing of one) (citing Strickland, 466 U.S. at 697).

45. Therefore, I find that relief on this second claim should also be denied.

### Recommendation

 I recommend that Petitioner's application for Writ of Habeas Corpus be denied and that this cause be dismissed with prejudice.  Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations.

_____
UNITED STATES MAGISTRATE JUDGE